IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:16-CV-330-D

| | |
|---|---|
| MARK B. NIPPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND RECOMMENDATION** |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Mark B. Nipper ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Nancy A. Berryhill ("Commissioner") denying his application for supplemental security income ("SSI") on the grounds that he is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. D.E. 20, 23. Both filed memoranda in support of their respective motions. D.E. 21, 24. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 30 Aug. 2017 Text Ord. For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for SSI on 2 May 2012, alleging a disability onset date of 23 April 2012. Transcript of Proceedings ("Tr.") 617. The application was denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 617. On 3 March 2015, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff (represented by a non-

attorney representative), plaintiff's fiancé, and a vocational expert testified. Tr. 22-56. The ALJ issued a decision denying plaintiff's claim on 31 March 2015. Tr. 617-29.

Plaintiff timely requested review by the Appeals Council. Tr. 21. On 28 July 2016, the Appeals Council denied the request for review.[1] Tr. 5. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 416.1481. On 23 September 2016, plaintiff commenced this proceeding for judicial review of the ALJ's decision, pursuant to 42 U.S.C. § 1383(c)(3). *See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 4); Compl. (D.E. 5).

### B. Standards for Disability

#### 1. Five-Step Analysis

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

---

[1] It appears that the Appeals Counsel re-sent a copy of the denial of the request for review to plaintiff on 25 August 2016. Tr. 2.

2

The disability regulations under the Act ("Regulations")[2] provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform [his] past work given the limitations caused by [his] medical impairments; and at step five, whether the claimant can perform other work.
>
> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because [his] impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.
>
> If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect [his] ability to work. [20 C.F.R.] § 416.945(a)(1). To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).
>
> The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because [he] is able to perform [his] past work. Or, if the exertion required for the claimant's past work exceeds [his RFC], the ALJ goes on to step five.
>
> At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429. The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

---

[2] The versions of the Regulations cited herein are those in effect at the time of issuance of the ALJ's decision.

## 2.     Materiality of Drug Addiction or Alcoholism

If under this analysis a claimant is found to be disabled and there is medical evidence that the claimant has drug addiction or alcoholism, an additional determination is required—namely, whether such substance abuse is a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(a). If the substance abuse is found to be material, the claimant cannot be considered disabled under the Act. *See* 42 U.S.C. § 1382c(a)(3)(J) (providing that a claimant "shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled"). The burden of proving that the drug addiction or alcoholism is not material falls on the claimant. Soc. Sec. Ruling 13-2p, 2013 WL 621536, at *4 (20 Feb. 2013) ("The claimant has the burden of proving disability throughout to sequential evaluation process."); *see also McCray v. Colvin*, C/A No. 1:13-173-SVH, 2014 WL 3798835, at *13 (D.S.C. 31 July 2014) ("If the medical evidence contains indications of drug addiction or alcoholism, '[t]he claimant bears the burden of proving that drug or alcohol addiction was not a contributing factor material to the disability determination.'" (alteration in original) (quoting *Newsome v. Astrue*, 817 F. Supp. 2d 111, 126 (E.D.N.Y. 2011))).

The key factor examined in making the materiality determination on drug addiction or alcoholism is whether the claimant would still be disabled if he stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(1). To make this determination, an evaluation is made regarding which of the physical and mental limitations that the claimant has when using drugs or alcohol would remain if he stopped such use and then whether any of the remaining limitations would be disabling. *Id.* § 416.935(b)(2). If the remaining limitations are found not disabling, the claimant's substance abuse is deemed a contributing factor material to the determination of disability, and the claimant

4

is determined to be not disabled. *Id.* § 416.935(b)(2)(i). On the other hand, if the remaining limitations are found to be disabling, the substance abuse is deemed not to be material, and the claimant is deemed disabled. *Id.* § 416.935(b)(2)(ii).

C.     ALJ's Findings

Plaintiff was 42 years old on the date he filed his application (Tr. 628 ¶ 8) and 44 years old on the date of the hearing (Tr. 26). The ALJ found that he had a high school education (Tr. 628 ¶ 9) and no past relevant work (Tr. 628 ¶ 7).

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since 2 May 2012, the application date. Tr. 619 ¶ 1. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: degenerative disc disease, rotator cuff syndrome, compression fracture, carpal tunnel syndrome, schizoaffective disorder, post-traumatic stress disorder, and polysubstance abuse. Tr. 619 ¶ 2.

At step three, the ALJ found that plaintiff, including his substance use disorder, did meet the Listings for 12.03 (Schizophrenic, Paranoid, and Other Psychotic Disorders), 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders), and 12.09 (Substance Addiction Disorders). Tr. 620 ¶ 3. The ALJ next determined that, if plaintiff stopped his substance use, "the remaining limitations would cause more than a minimal impact on [his] ability to perform basic work activities; therefore, [he] would continue to have a severe impairment or combination of impairments." Tr. 622 ¶ 4. The ALJ then found that, if plaintiff stopped his substance use, he would not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 622 ¶ 5.

5

The ALJ next determined that plaintiff would have the RFC to perform a limited range of sedentary work if he stopped the substance use:

> If the claimant stopped the substance use, the claimant would have the [RFC] to perform sedentary work as defined in 20 CFR 416.967(a).[3] The claimant could lift, carry, push and pull 10 pounds occasionally, and stand and walk for up to two hours in an eight-hour work day, and sit for up to six hours in an eight-hour work day. The claimant could frequently reach out and up, stoop, crouch, kneel, and crawl. He could not work at heights or around dangerous machinery. In addition, the claimant would be limited to simple, routine, repetitive tasks. He could apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in or from standardized situations. The claimant would be limited to only occasional contact with coworkers and supervisors and no dealing with the public. He would [be] unable to work at jobs requiring complex decision making, constant change, or dealing with crisis situations.

Tr. 623 ¶ 6.

The ALJ found at step four that plaintiff had no past relevant work. Tr. 628 ¶ 7. At step five, citing the testimony of the vocational expert, the ALJ found that, if plaintiff stopped his substance use, there would be jobs in the national economy existing in significant numbers that he could perform, including jobs in the occupations of sorter, voucher clerk, and call out operator. Tr. 628-29 ¶ 11. The ALJ then determined that plaintiff's substance use disorder was "a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use." Tr. 629 ¶ 12. The ALJ accordingly concluded that because substance use is a contributing factor material to the determination of disability, the plaintiff had not been under a disability from the date he filed his SSI application, 2 May 2012, through the date of the decision, 31 March 2015. Tr. 629 ¶ 12.

---

[3] Under this regulation, sedentary work is defined as work "involv[ing] lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a); *see also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "S-Sedentary Work," 1991 WL 688702. "Sedentary work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 416.957.

6

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id*.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible

without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## III. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed, or in the alternative, the case should be remanded for a new hearing on the grounds that the ALJ erred in his assessment of plaintiff's RFC and his evaluation of medical opinion evidence. The court finds that error in the ALJ's credibility assessment requires remand of this case. Because this issue is dispositive of this appeal, the court will address only it and matters relating to it.

## IV. ALJ'S CREDIBILITY ASSESSMENT

### A. Applicable Legal Principles

The ALJ's assessment of claimant's credibility involves a two-step process. First, the ALJ must determine whether the claimant's medically documented impairments could cause his alleged symptoms. *Craig*, 76 F.3d at 594-95. Next, the ALJ must evaluate the claimant's statements concerning those symptoms. *Id.* The ALJ's "'decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record.'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996)).[4]

In assessing a claimant's credibility, the ALJ must consider "all of the available evidence." 20 C.F.R. § 416.929(c)(1). The evidence that should be considered includes: the claimant's history; signs and laboratory findings; statements from the claimant, the claimant's treating and nontreating sources about how the claimant's symptoms affect the claimant, including medical

---

[4] Although Soc. Sec. Ruling 96-7p was rescinded by Soc. Sec. Ruling 16-3p, 2016 WL 1119029 (issued 16 Mar. 2016; effective 28 Mar. 2016 pursuant to 81 Fed. Reg. 15776 (24 Mar. 2016)), it postdates the ALJ's decision in this case, issued 31 March 2015.

8

opinions; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of his pain or other symptoms; any measures the claimant uses or has used to relieve his pain or other symptoms; and other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* § 416.929(c)(1)-(3).

"A party seeking benefits need not provide objective medical evidence to corroborate his allegations of pain." *Hall v. Astrue*, No. 2:11-CV-22-D, 2012 WL 3727317, at *2 (E.D.N.C. 28 Aug. 2012); *see also Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017). "However, an ALJ may discredit a party's allegations of pain to the extent the allegations are inconsistent with (1) objective medical evidence of the underlying impairment or (2) the pain reasonably expected to be caused by the underlying impairment." *Id.* (citing *Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006)); *Craig*, 76 F.3d at 595.

### B. Analysis

Plaintiff testified to the effect that the limitations imposed by his impairments are disabling. *See* Tr. 26-44. He claims specifically that back pain and his mental impairments keep him from working. Tr. 29-31. At step three, the ALJ assessed plaintiff's allegations regarding his substance use and found "that claimant is credible concerning his symptoms and limitations with his substance abuse disorder." Tr. 620 ¶ 3. In assessing plaintiff's RFC, the ALJ made a second credibility determination in which he made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 624 ¶ 6. At the second step of the credibility assessment, the ALJ found that plaintiff's allegations

9

were not credible "*to the extent they are inconsistent with the [RFC] assessment* for the reasons explained below." Tr. 624 ¶ 6 (emphasis added).

One deficiency evident on the face of the ALJ's credibility determination is that the second determination is based to a substantial degree on the RFC that the ALJ had determined him to have. The Fourth Circuit in *Mascio* condemned such backwards reasoning. There, the ALJ based his determination on the claimant's credibility on the RFC that the ALJ had determined the claimant to have, stating "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." *Mascio*, 780 F.3d at 639. In rejecting the ALJ's reasoning, the Fourth Circuit explained, "We agree with the Seventh Circuit that this boilerplate 'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" *Id.* (internal quotation marks omitted) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)).

As *Mascio* points out, an ALJ's improper reliance on his RFC determination in making the credibility determination is harmless if the ALJ otherwise properly analyzes the claimant's credibility. *Id.* Here, the ALJ provided four specific reasons for his credibility determination. Tr. 627 ¶ 6. He stated:

> [1] The undersigned finds that the claimant does not have any significant anatomical structural deformities and there is no evidence of ongoing nerve root compression which might be expected based on the degree of pain alleged. [2] Further, the claimant has not required such aggressive measures for symptom relief as use of steroid medication, epidural injections, or application of TENS equipment. The treatment regimen, therefore, indicates that the claimant's symptoms are not as intractable as alleged. [3] In addition, the medical evidence and observations by the [ALJ] do not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habitus or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process. These

10

factors indicate that the claimant's allegations of functional restrictions are not fully credible.

[4] Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet a review of the record in this case reveals no restrictions recommended by any treating doctor.

Tr. 627-28 ¶ 6.

The reasons are deficient, and thus, do not constitute substantial evidence supporting the ALJ's credibility determination. The ALJ's credibility analysis is based entirely on plaintiff's statements regarding his physical limitations. The ALJ does not engage in any analysis regarding plaintiff's statements regarding his mental limitations. The ALJ obviously found at least some of plaintiff's statements regarding his mental limitations credible because he included significant mental limitations in the RFC. However, the extent to which he found plaintiff's statements concerning his mental impairments to be credible or not credible is unclear.

The ALJ's first and second reasons are deficient in additional ways. Regarding the ALJ's first reason based on lack of nerve root impingement and anatomical deformities, while there is no evidence of nerve root impingement, there is evidence of anatomical structural deformities. An x-ray on 1 October 2014 showed an "old appearing L1 compression fracture with approximately 60% loss of anterior vertebral height with large anterior residual body and osteophyte complex formation with T12 –L1 associated segmental kyphosis." Tr. 603. The physician attributes this fracture to his fall from a bridge in 2012. Tr. 600.[5] The ALJ does not address how this is not a significant anatomical structural deformity.

---

[5] Moreover, this fracture appears never to have been treated. All of the scans at Mission Hospital, the medical facility that treated plaintiff after the fall, were characterized as normal. Tr. 504-09 (showing CT scans with normal findings). There is no mention of a lumbar compression fracture in any of those records. Tr. 478-545; 505 ("no significant abnormality identified" in CT scan of thoracic and lumbar spine); 528 ("no evidence of fracture").

11

In his second reason, the ALJ discredits petitioner because he has not received aggressive treatment for his physical limitations. However, plaintiff testified at the hearing that he is unemployed and does not have health insurance. Tr. 29, 43-44. He further testified that his fiancé had paid for medical visits. Tr. 32. The record demonstrates that plaintiff lacked insurance (Tr. 258, 469, 592) and that he was a "self-pay" patient (Tr. 593, 597, 598, 601). Moreover, on 14 October 2014, plaintiff chose to treat his physical impairments conservatively "given his self-pay status" (Tr. 597) and on 28 October 2014, plaintiff's physician also noted "Orthopaedic further reevaluation and treatment pending disability and insurance coverage at this time." Tr. 588.

"[A] claimant may not be penalized for not seeking treatment [he] cannot afford." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). The ALJ has not otherwise addressed plaintiff's lack of insurance and how this may have affected his ability to receive treatment. Without such explanation, the ALJ's reasoning that plaintiff's pain must not be as intractable as alleged because he has not received aggressive treatment does not constitute substantial evidence.

Furthermore, the ALJ provides no explanation as to why he found plaintiff's statements regarding his substance abuse to be credible, but discredited plaintiff's statements regarding the remainder of his impairments. The court is left to guess how the ALJ reached the two very different determinations.

The ALJ's errors in analyzing plaintiff's credibility are harmful. Proper handling of such evidence could reasonably be expected to have led to a different outcome regarding the ALJ's assessment of plaintiff's credibility and thereby the determination of plaintiff's RFC and potentially the ultimate issue of disability. *See, e.g., Mascio*, 780 F.3d at 639-40 (holding that error in the ALJ's failure to properly analyze plaintiff's credibility was not harmless and warranted remand); *Garner v. Astrue*, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v.*

*Sanders*, 556 U.S. 396, 409 (2009)). The ALJ's errors in his credibility assessment therefore warrant remand.

In addition, the errors in the ALJ's credibility assessment frustrate meaningful substantial-evidence review of the ALJ's decision by the court. Specifically, the ALJ failed to build "'an accurate logical bridge from the evidence to [the] conclusions'" he reached regarding plaintiff's credibility as required. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). This failure provides an independent ground for remand even if plaintiff was deemed to have waived objections to the ALJ's credibility assessment by not asserting it. *Id.*; *Lewis*, 2017 WL 2381113, at *6 ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ' s ruling," including " a discussion of which evidence the ALJ found credible and why, and the specific application of the pertinent legal requirements to the record evidence." (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013))).

## V. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 20) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 23) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) for further proceedings consistent with this Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 18 December 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the

Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 4th day of December 2017.

_____
James E. Gates
United States Magistrate Judge